Argued and submitted April 14, reversed, referee's order reinstated July 27, 1983

In the Matter of the Compensation of
Oscar Drew, Claimant.

**DREW,**
*Petitioner,*

*v.*

**WEYERHAEUSER COMPANY,**
*Respondent.*

(WCB Case 81-02811; CA A25671)

667 P2d 5

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

William McDaniel, Coos Bay, argued the cause for respondent. On the brief were Paul L. Roess and Foss, Whitty & Roess, Coos Bay.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Claimant appeals from an order of the Workers' Compensation Board that reversed the opinion and order of the referee and held that claimant had failed to prove that his left knee condition was causally related to his industrial accident. We hold that claimant has met his burden of proof and reverse.

On March 18, 1978, claimant fell part way through a faulty catwalk, which was suspended 25 feet above the ground. He was able to avoid falling all the way by catching himself on a handrail. He was then assisted by another employe back onto the catwalk. Employer accepted his claims for injuries to his back and right shoulder from the accident but denied the claim for injury to the left knee as not being causally related to the industrial accident.

The evidence which claimant presented connecting his left knee to the industrial accident is as follows: Elbert Jeans, the co-employe who assisted him after the accident, testified that, when he helped him through the hole in the catwalk, claimant stated: "he hurt his back and bumped his knee * * *." Immediately after the accident, claimant pulled up his pants leg and Jeans observed that his knee was hurt, the leg was chafed from four to five inches above the ankle part way up the leg and the knee was red. Jeans further stated that when claimant returned to work, he complained that the knee bothered him, and he observed that it bothered him by "the way he walked." Jeans had seen claimant step up leading with his left leg. When he put his weight on his left knee, "it was as if he had weights on his legs," and he fell against the wall. Jeans reported that claimant had a "definite limp" for 30 to 60 days after the accident and that he was still favoring his left leg when he retired.

On claimant's claim form, filed two days after the accident, he listed injury to his "back, rt. shoulder, lt. knee." The first mention of the left knee in a medical report is in Dr. Lindsay's chart note of June 6, 1978, nearly three months after the injury, in which he states:

> "* * * [Claimant] now says that he is having lots of pain in his left knee, down his left leg and to a certain extent in the left lower back area. He states that this portion was injured at the time of his original injury although I find nothing noted in the report to mention this. * * * He has lots of knee pain * * *."

Although the referee in the hearing on extent of disability did not award any permanent disability for his knee condition, he noted in his findings that claimant had sustained a left knee injury when he fell through the catwalk.

The medical evidence on causation consists of the reports of Dr. Bert and Dr. Lindsay. Although Dr. Lindsay did not make a specific finding on causation, he did note that he had been claimant's family doctor for a number of years and that he had always found him to be

"* * * reliable and conscientious regarding his symptoms and follow-up of my instructions. I would have no reason to think that [claimant] is not being entirely truthful and candid about this particular injury and its relationship to his industrial accident."

Dr. Bert initially stated that it was "possible" the knee condition was causally related to the accident. In later reports, he stated:

"I feel that, based upon reasonable medical probability, [claimant's] knee surgery was the result of the industrial injury at Weyerhaeuser on March 18, 1978. I feel this is true because the condition I discovered at the time of surgery in his knee, the osteochondritis and cartilage tear was definitely the result of trauma and historically this is this man's major trauma."

Dr. Bert noted that "[o]nce a small tear is initiated the tearing process generally does continue with everyday activities and it is possible that this could have happened in [claimant's] case."

The medical report of Dr. Bert, together with the non-medical evidence establishing that claimant complained of a knee injury immediately after the accident, meets claimant's burden of proving by a preponderance of the evidence that his current knee condition is causally related to his compensable injury.

Reversed; referee's order reinstated.